May it please the Court, Kelly Woodruff on behalf of Appellant John Kontrabecki who is present in court today with his wife after having just been released from civil incarceration for 13 months. I'd like to reserve two minutes for rebuttal please. So is the case moot? The case is not moot, Your Honor. Mr. Kontrabecki is still under contempt right now. He has been subjected to, at this point, $7.5 million dollars worth of fines, which he would like to recover. He has also had to recently pay $5 million dollars to the Polish man in Poland to actually get him to transfer the stock to Lehman Brothers. So no, Your Honor, this is not moot. As of today, Mr. Kontrabecki is still in contempt and Lehman is still making efforts to enforce that contempt against him. I'm sorry. I'm only asking these questions to determine mootness. Of course, that's the only way we can go outside the records. Certainly. But if you say that he has paid money to, and again, these are facts that you're representing here and I'm just exploring them for mootness purposes. You say that he's paid $5 million dollars to, to whom again? To Piotr Kokolka, the man in Poland who actually owns the stock. What about the $7.5 million? $7.5 million are sanctions, Your Honor. $1.5 million is being held in trust by the trustee in an escrow account. Those were his daily fines. And then just recently, the bankruptcy judge sanctioned him an additional $6 million dollars to be paid to Lehman Brothers. Lehman is currently trying to execute on that judgment. Okay, but he has now paid money to induce the guy in Poland to return the stock. Correct. What else is left for him to do? There is nothing left for him to do, Your Honor. And that is, that is part of the problem here, that the injunction has now been complete. The injunction is over. It's final. This man was held in contempt for, on an order that is absolutely unclear as to what was required. It's unconstitutional on its face. And he has now suffered 13 months, excuse me, 13 months in prison. Again, while his wife was pregnant, his first son was born, missed his first Christmas, missed his first birthday. Well, the 13 months doesn't make any difference, does it? I'm sorry, Your Honor. As far as mootness is concerned, does the 13 months make any difference? The 13 months does not make a difference to the mootness. Okay, so that's just, that's sort of emotional, and that's interesting. But the thing you're saying makes a difference is he wants the contempt fines, fines, not fines, he wants the contempt money back. He wants the contempt fines money back, Your Honor. In addition, he wants the contempt removed. But that can be sorted out when the case is over, right? Your Honor, that would... If the contempt is purgatory or interlocutory, because this was an appeal from a contempt order. And I realize that while the contempt is still ongoing and while he's still being coerced, one way or the other, either financially or otherwise, you say, well, there's sort of an urgency about resolving it and he can maybe get an interlocutory. But at this point, we're just talking about money, and that can be sorted out at the end. There's no longer contempt order in effect, right? I mean, am I wrong about that? The contempt order is still in effect, Your Honor. As of today, it is still in effect. There are still... Doing what? What is the order now? For example, the court is still holding Mr. Kontrabecki's passport. He's an international businessman and they won't give it back. What does he have to do? That's a very good question, Your Honor. We don't know what he has to do. Well, I don't see what difference any of that makes. The thing is, the fact that there's an outstanding contempt order certainly isn't enough to give jurisdiction on a direct appeal. Assuming that you even made a direct appeal and it was dismissed, which I can't find in the record, but laying that aside for a moment, what the district judge said was, I'm not going to give you a discretionary appeal. But assuming, setting that aside for a moment, it's difficult to say just how one gets this up on direct appeal. As just simply points out, contempt sanctions typically are not directly appealed if it's civil contempt. That's true, right? Generally... Typically that's true, right? Typically, Your Honor, but it's absolutely not an absolute rule. And there are numerous cases, as we cited, in which appeals from quasi-interlocutory, quasi-final orders are in fact appealed. And there are numerous cases that say you can't appeal from a continuing contempt order. You can... It's just interlocutory. So there are lots of cases on both sides. That's all we're arguing about, whether we should go with one side or the other, because even though he caused this whole thing by deciding to play games when he was in charge of the bankruptcy estate, in fact, we should say, oh gosh, it's just too terrible to have sanctions put on him to require him to unravel what he did. Is that right? And for that reason, even though this is just a interlocutory order, we should hear it. I take it that's the argument. Excuse me, Your Honor. I believe that this is a final order appealable as of right. This case is much more akin to cases where the contempt was issued after a final injunction was ordered. In this case, although the injunction was termed a preliminary injunction, it had all the markings of a final order. There is nothing left to be done on the injunction. There will never be a permanent injunction in this case. That injunction will not be merged with any final order. And there is no... You just told us the bankruptcy judge just added six million more dollars. Is the bankruptcy judge just sort of at his whim, keep adding money, even though there's nothing that your client is required to do? The six million dollars was the damages award for the contempt, and that award was issued to Lehman. So Mr. Contrabecchi is now ordered to pay Lehman Brothers six million dollars. In addition, that damage award only goes up until, I believe, this time last year, and Lehman has indicated its intent to seek another year's worth of attorney's fees on the same unconstitutional contempt. So, yes, Your Honor, there is some urgency to hearing this matter now. And what there is nothing left to be done on is... Has your client paid the six million? Not yet, Your Honor. He's currently trying to raise the funds. He just recently paid five million dollars, as well as being out the one and a half for the sanctions that are being held by the court. He's not going to play games with the United States Bankruptcy Court in the future. Your Honor, I would dispute that he's been playing games. He was ordered to try to get the stock back, and that was two and a half years ago. It was the step before he was ordered to get the stock back. It was the issuance of the stock after the... Well, that's precisely the problem, Your Honor, but that's not what the Bankruptcy Court said. If the Bankruptcy Court had said that, then it would be a punishment in which the Bankruptcy Court does not have jurisdiction. No, the court said, you did this illegal breach of your fiduciary duty. You did all this. Get it back. I believe that this guy is really one of your minions, and you haven't shown me anything to suggest the contrary. Indeed, it's almost absurd to think the contrary. So I want you to get it back. And he laid out a bunch of different ways to do it as time went on. Well, two points to that, Your Honor. One is the fact that Mr. Kontrabek ended up 13 months in jail, again, shows that he couldn't just snap his fingers and get it done. It didn't happen. It couldn't happen. He ended up paying five... Some people prefer to be in jail and not spend their money. I don't see how it demonstrates that at all. There was a reporter recently who spent an awful lot of time in jail, and obviously she could have done something to get herself out. But there she sat in jail. That's absolutely true, Your Honor. But this man also ended up paying five million dollars for stock that had no equity. None. Zero dollars of equity. Five million dollars he paid to transfer this stock to Lehman. You know, if you're going to spend the remaining minute and a half trying to persuade us your client's a good guy who's been wronged and, you know, treated poorly and all that, you're going to waste it. You need to come up with legal arguments as to why this case is probably before us. I don't intend to try to persuade you that my client is a good guy or a bad guy. Your Honor, this case, this contempt... Let's talk about what kind of a guy he is. Exactly, Your Honor. This contempt arose from an injunction that has all the makings of a final order. It's the injunction itself that has nothing left to be done. And there's the possibility that Mr. Kontrabecki won't get an appeal if we have to wait for however long it takes to actually resolve the adversary proceeding, which involves entirely separate issues. The injunction, as I said, there will not be a permanent injunction. The injunction required him to get the stock back and to not interfere, et cetera. There won't be a permanent injunction. That's what I'm trying to figure. That was my initial question. Maybe the injunction is gone now. What else is left for him to do under the... There's nothing left for him to do under the injunction, which is why this contempt order is appealable. Your Honor, it's like it's like a number of the cases where the underlying order was not, in fact, final, but the contempt arose from a quasi-final order. It had all of the makings of. And Stone v. San Francisco was one of those cases. Gates, I believe, was one of those cases. In other words... So it's kind of a reverse mootness argument, I take it. It was clearly not final at the time you tried to appeal it to the district court. But now it's become final because now he's out of jail and he's paid over a lot of money and may have to pay more in the future. But it wasn't final before. It's just become final now. No, I disagree. It was final before, Your Honor. The district court erred in finding that it was not final. So any contempt order, if I gather, is final in your view? No, Your Honor. This is a plain old contempt order. That's all it was. It do it or pay so much a day until you've done it. That's a plain old civil contempt order. The difference, Your Honor, is unlike the Elmas case on which Lehman relies, the injunction in that case ordered the defendant to do something that was necessary for the litigation, to produce documents and information. Here, Lehman obtained its entire relief on the injunction. There was nothing further to be done. The relief that it sought in the injunctive proceeding was not at all related to the underlying adversary proceeding. In other words, whether or not Mr. Kontrabecki was in contempt of that injunction has no bearing whatsoever on whether or not he violated the automatic stay, breached his fiduciary duties, breached the contracts. The underlying claims in the adversary proceeding are entirely unrelated. And should this court not review this now, Lehman has not yet begun to prosecute the adversary. Have you sought to have the courts below, either the district court or the bankruptcy court, lift the injunctive? I'm sorry? Have you sought to have the courts below lift this injunction? We have, Your Honor. And we have, Your Honor. And they have not. Okay. Your time is up. I would like to make just a couple of points. First, the order on appeal is the coercive sanctions order. It's not the injunction. There was no appeal taken from the injunction. The order on appeal is a civil coercive sanctions order, so determined by the bankruptcy court and so carefully determined by Judge Breyer when he considered the entire record in order to make his decision with respect to appeal, dismissing the appeal the first time. I think that's a very peculiar thing about this case. When one looks at the district court docket and record, you both seem to say in your briefs and you said just now that Judge Breyer dismissed the direct appeal. I don't find a whisper of that in the district court record. Your Honor, what Judge Breyer – Judge Breyer confronted a decision or a request by Mr. Contrabecchi for interlock – for discretionary appeal of an interlocutory order, and there was also an assertion made by Mr. Contrabecchi before the district court that it was an appeal as of right. That's correct. But, of course, he doesn't have to do – Judge Breyer doesn't have to do anything if it's an appeal as of right. It's just an appeal as of right, and there it is. That's true, Your Honor. So where does he – he never dismisses it. I mean, his order at the end just says, I deny – I deny the motion for discretionary appeal. That's his order. That's the only order, and there's not even a notice of appeal in the docket in this case. It's in a – there's one in a different district court case, but not in this one. So why do we say that Judge Breyer dismissed the direct appeal? Well, I believe what Judge Breyer did, and I'm – I'm now relying upon his opinion. Yes. Me, too. In Judge Breyer's opinion, he analyzed whether there was an appeal as of right. Right. And he said, I don't think there is. He concluded that there was not an appeal as of right. Right. He concluded that he would not grant discretionary review of an interlocutory order, which is what he construed the bankruptcy court's order to be. Precisely. And accordingly, he – Your Honor, it's correct. At the end of the day, his order is conclusion, motion for discretionary appeal denied. That's correct, Your Honor. That's it. That's his conclusion. That – that is correct. Yes. Well, I have to confess, we've – we've proceeded on the assumption that we were here based upon an attempt to establish the Bonham situation and have, therefore, argued the case on that assumption. So everybody thought, what the heck, it looks like he – he must have meant to dismiss the direct appeal, which wasn't in front of him, so, therefore, he – he did, and something like that. It's something like that, Your Honor. Okay. I apologize for the – for the confusion in the record, but that is – that is, in fact, how we got to where we are. Okay. So what's here before us? Your Honor, I think – I think there is – I think there's nothing here before you, to be honest. I think there's no jurisdiction, because I think Judge Breyer's disposition, either, as Judge Fernandez has – has articulated it, I think correctly, has been denied a request for interlocutory appeal, in which case this Court clearly has no jurisdiction under 152D, or if the Court indulges the operating assumption that we proceeded on, that it was a request to – it was an attempt to appeal from a district court dismissal of a purported appeal from a bankruptcy court, non-final order, on the basis that it was not a final order, then I think Bonham says there's no jurisdiction in this Court for that either. So I think the disposition from this Court ought to be, based on that logic, either branch, that there's no jurisdiction before this Court and there are no other circumstances why the Court should exercise mandate jurisdiction. I want to point out just two other facts. The bankruptcy court's coercive sanctions order was predicated upon a specific finding of control by Mr. Kontrabecki, of his co-conspirator. Hence, the bankruptcy court concluded that Mr. Kontrabecki had the ability to comply. And finally, we cited in our – in our brief a reference to another district court appeal that was then pending at the time that we filed our papers, but that district court appeal has since been resolved by Judge Breyer denying the – the chance to challenge to the bankruptcy court's request to dissolve the injunction. So is that before us? No, it is not, Your Honor. So unless the Court has further questions, I'm prepared to submit. Okay. Thank you. Thank you. Thank you. Thank you.
judges: Beezer, Kozinski, Hatter